### 46929. AMBLES v. THE STATE.
(383 SE2d 555)

CLARKE, Presiding Justice.

Eddie James Ambles is under indictment for child molestation. At trial he challenged the alleged victim's competency to testify, citing OCGA § 24-9-5.[1] As required by OCGA § 24-9-7, the trial court held a hearing to determine competency.[2] The trial court found that the child was not competent to testify. The state then moved the trial court to hold OCGA §§ 24-9-5 and 24-9-7 unconstitutional. The court granted the state's motion, holding that the statutes violate the Equal Protection Clause of the United States Constitution. We granted Ambles' application for interlocutory appeal and reverse.

1. The first issue raised in this appeal is whether the state has standing to challenge the constitutionality of the statutes at issue here. We hold that it does.

The general rule is that a party has standing to challenge the constitutionality of a statute only if the statute has an adverse impact on that party's own rights. *Lambeth v. State*, 257 Ga. 15 (354 SE2d 144) (1987). Ambles asserts that the witness competency statutes affect the rights of the child, not those of the state. We disagree.

The state has both the duty and the right to protect the security

---

[1] OCGA § 24-9-5 states, "[p]ersons who do not have the use of reason, such as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, shall be incompetent to testify." The statute has recently been amended to state, ". . . in a criminal prosecution for child molestation and other criminal cases in which a child was a victim or witness, the child is competent to testify and the trier of fact determines his credibility." The amended statute does *not* apply in this action.

[2] OCGA § 24-9-7 states in part, "[t]he competency of witnesses shall be decided by the court. The court shall by examination decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness or infancy."

of its citizens by prosecuting crime. Georgia Constitution of 1983, Art. I, Sec. I, Par. II; OCGA § 17-1-2. Because the purpose of criminal law is to serve the public functions of deterrence, rehabilitation and retribution, it is the state, not the victim, that has an interest in criminal prosecutions. See *Linda R. S. v. Richard D.*, 410 U. S. 614 (93 SC 1146, 35 LE2d 536) (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). In aid of the right to prosecute, the state has the corresponding right to compel the attendance of witnesses, including the victim, and to call those witnesses to testify about their knowledge of the crime. OCGA § 17-7-190.

In this case the alleged victim has been found to be incompetent to testify. Without the testimony of this witness, the state may not be able to make out its case against the defendant. The state's rights are adversely affected by the competency statutes to the extent that they limit the state's ability to present evidence of the crime. The state therefore has standing to challenge the statutes.

2. Next, we address the issue of whether the statutes are constitutional. The state challenges the statutes under the Equal Protection Clause of the U. S. Constitution and under the Equal Protection and Privileges and Immunities clauses of the Georgia Constitution of 1983, Art. I, Sec. I, Pars. II and VII. The protection of the Georgia Constitution of 1983, Art. I, Sec. I, Par. II, and the Equal Protection Clause of the federal constitution have been held to be coextensive. *McDaniel v. Thomas*, 248 Ga. 632 (285 SE2d 156) (1981). And, although there have been few cases interpreting the Privileges and Immunities Clause of the Georgia Constitution of 1983, to the extent that an action has challenged statutory distinctions between classes of citizens, equal protection analysis has been employed. See, e.g., *Stoker v. Wood*, 161 Ga. App. 110 (289 SE2d 265) (1982). We therefore address all of these constitutional challenges using equal protection analysis.

When assessing equal protection challenges, a statute is tested under a standard of strict judicial scrutiny if it either operates to the disadvantage of a suspect class or interferes with the exercise of a fundamental right. *San Antonio Independent School District v. Rodriguez*, 411 U. S. 1 (93 SC 1278, 36 LE2d 16) (1973). Strict judicial scrutiny demands that the statute be narrowly tailored to serve a compelling state interest. Id. at 17. If neither a suspect class nor a fundamental right is affected by the statute, the statute need only bear a rational relationship to some legitimate state purpose. *Williamson v. Lee Optical*, 348 U. S. 483 (75 SC 461, 99 LE 563) (1955). Here it is alleged that OCGA §§ 24-9-5 and 24-9-7 require strict judicial scrutiny because they unlawfully discriminate against children and mentally handicapped people and because they adversely impact

the fundamental right to testify. We will address each contention in turn.

(a) OCGA § 24-9-5 declares that a witness who does not have the use of reason is incompetent to testify. While it may be true that the issue of witness competency arises most frequently in the context of child molestation cases, it cannot be said that the statute creates a classification on the basis of minority or mental handicap. It discriminates between people with the use of reason and those without it. In any event, neither minority nor inability to reason has been held to be a suspect classification for the purpose of equal protection. *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432 (105 SC 3249, 87 LE2d 313) (1985); *Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283 (102 SC 1070, 71 LE2d 152) (1982).

(b) The state next urges that strict scrutiny is appropriate because the statutes impinge on the "fundamental right to testify." The state finds the basis for a "fundamental right to testify" in OCGA § 1-2-6, which states in part, "[t]he rights of citizens include, without limitation . . . [t]he right to testify as a witness."

We hold that OCGA § 1-2-6 creates a statutory right to testify as a witness that is neither unlimited[3] nor constitutionally fundamental. Fundamental constitutional rights are those that are recognized as having a value so essential to individual liberty in our society that their infringement merits careful scrutiny by the courts. The list that the U. S. Supreme Court has identified as "fundamental" is not long. It includes the guarantees of the Bill of Rights, the right to fairness in the criminal process, the right to privacy, the right to travel, the right to vote, freedom of association, and procedural due process rights. Rotunda, Nowak & Young, *Treatise on Constitutional Law Substance and Procedure*, § 15.4 (1986). The Supreme Court has expressed reluctance to recognize other important individual rights as "fundamental." See, e.g., *Rodriguez*, supra at 31-35 (no fundamental right to education); *Dandridge v. Williams*, 397 U. S. 471 (90 SC 1153, 25 LE2d 491) (1970) (no fundamental right to subsistence payments).

History and tradition demonstrate no fundamental right to testify. At common law many classes of persons including parties, anyone who had been convicted of a crime, and husbands and wives, were disqualified from testifying as witnesses. See McCormick's Handbook of the Law of Evidence, 151-152 (E. Cleary, 2d ed. 1972). Until 1961 criminal defendants in Georgia were not allowed to testify in their own behalf, and were restricted to presenting an unsworn statement.

---

[3] The state suggests that the language of the statute means that the right to testify is without limitation. We construe the "without limitation" language to mean that the list of rights enumerated is not exhaustive.

*Ferguson v. Georgia*, 365 U. S. 570 (81 SC 756, 5 LE2d 783) (1961). In *Rock v. Arkansas*, 483 U. S. 44 (107 SC 2704, 97 LE2d 37) (1987), the Supreme Court recognized a fundamental right of a defendant in a criminal action to testify in her own defense, basing that finding on the guarantees of the Fifth and Sixth Amendments and due process considerations. No corresponding right of a victim of a crime has been identified. This is logical because the only parties to a criminal proceeding are the state, as represented by the prosecutor, and the defendant. Any right of a victim to testify in a criminal trial is necessarily subject to the prosecutor's discretion to call the victim to the stand. Neither is there any unqualified right of the state to obtain the testimony of the victim. The right of the state to compel testimony has historically, and is still, limited by the witness' right to claim various privileges, such as the attorney-client privilege and the right against self-incrimination.

Thus, we conclude that the right of a victim to testify in a criminal proceeding is not constitutionally fundamental and may be limited by the state legislature for a legitimate purpose. The asserted purpose of the competency statute is to protect the integrity of the fact-finding process. It requires only that the witness has sufficient understanding to receive, remember and narrate impressions and is sensible of the obligation to tell the truth. *Watkins v. State*, 19 Ga. App. 234 (91 SE 284) (1917). These requirements are reasonable on their face and have even been judicially implied in several jurisdictions that do not have witness competency statutes. See M. Graham, *The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship*, 72 Minn. L. Rev. 523 at 554-556 (1988). It is not even suggested that the legislature enacted the statute in order to discriminate against children or the mentally handicapped. Cf. *City of Cleburne*, supra. Instead, the statute attempts to distinguish between those that the legislature deems capable of aiding the legal investigation and those who are not. We conclude that the competency statute presents a reasonable requirement regarding the minimal level of understanding for people participating in one of the most important functions of government.

3. Finally, the state challenges the portion of the statute that assigns the task of determining witness competency to the trial judge rather than to the jury. We find no constitutional flaw. Judges must often make preliminary fact determinations that affect the admissibility of evidence. The procedure of requiring preliminary fact determinations to be made by a judge rather than a jury has withstood constitutional scrutiny and, indeed, has been held to be constitutionally required in some situations. See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964); *Batts v. State*, 238 Ga. 664 (235 SE2d 377) (1977).

Although competency statutes have undergone extensive revision nationwide and have been challenged frequently in recent years, the parties have not cited and this court has not found any decision holding a witness competency statute to be violative of the constitutional rights of children or mentally handicapped people. Moreover, our own analysis does not reveal any constitutional flaw. Thus, we conclude that the trial court erred.

*Judgment reversed. All the Justices concur, except Weltner, J., not participating.*

DECIDED SEPTEMBER 11, 1989.

*M. Michael Kendall,* for appellant.

*W. Fletcher Sams, District Attorney, J. David Fowler, Assistant District Attorney,* for appellee.